### GRIGSBY et al. v. FIRST NAT. BANK IN QUANAH et al.

#### No. 4979.

Court of Civil Appeals of Texas. Amarillo.

Jan. 23, 1939.

Rehearing Denied Feb. 20, 1939.

Charles Nordyke, of Abilene, and Mc-Whorter & Howard, of Lubbock, for appellants.

E. L. Klett and B. B. Chappell, both of Lubbock, and W. T. Perkins, of Quanah, for appellees.

JACKSON, Justice.

Johnnie Dell Grigsby and W. E. Grigsby, Jr., minors, by their next friend, W. R. Fickas, plaintiffs, instituted this suit in the District Court of Lubbock County against the defendants First National Bank in Quanah, Ruby G. Borders, her husband, H. F. Borders, and W. E. Grigsby, to recover the sum of $7,500.

Plaintiffs alleged that the defendants had converted to their own use and benefit that amount of money which belonged to Johnnie Dell and W. E. Grigsby, Jr., and sought a judgment therefor.

No complaint is made by the defendants of the action of the court in overruling the pleas of abatement urged by them and they answered to the merits with a general demurrer and a general denial.

The case was submitted to the court without the intervention of a jury and judgment entered that plaintiffs take nothing by their suit and defendants go hence with their cost. The appellants challenge as erroneous the judgment of the court denying them a recovery, contending that the undisputed evidence shows conclusively that the First National Bank in Quanah and Ruby G. Borders converted $7,500 which belonged to the minor plaintiffs. No attack is made on the judgment in favor of the other defendants.

The record discloses that Ruby G. Borders, formerly Ruby Dell Grigsby, is the mother of the minors and was the wife of their deceased father, John I. Grigsby, who died October 28, 1927, and left his interest in the community estate, which descended to the minor plaintiffs and a part of which was Lot 19, Block 6, in the town of Quanah, with the improvements thereon, which consisted of the Bon Ton Bakery with the furniture, fixtures, tools and equipment used in connection with the operation of the bakery.

The mother was the guardian of the person and estate of the minors from November 18, 1929, until May 19, 1936, but was removed by the court, and in August 24, 1936, W. E. Grigsby, the grandfather of the minors, was appointed by the court and qualified as their guardian, but he declined to institute or maintain the instant suit, which accounts for its prosecution through W. R. Fickas as next friend.

On November 18, 1929, Ruby Dell Borders, guardian, made application to the probate court of Hardeman County for authority to sell certain personal property of the minor plaintiffs, which constituted their one-half undivided interest in the machinery, tools and equipment used in connection with the operation of the Bon Ton Bakery situated on Lot 19, Block 6, in the town of Quanah. In the application she sought permission to sell at private sale for part cash and part credit. The authority was granted and on the same day the guardian reported the sale of the property belonging to the minors to B. E. Harper for the sum of $10,000 to be paid $7,500 in cash and $2,500 in a note bearing interest at the rate of 8% per annum, payable in six months and secured by a chattel mortgage on the property. On November 25th thereafter the court considered the sale and being fully advised relative thereto found that the same was fairly made and was to the best interest of the estate, made in compliance with an order of the court on the 18th of November, describes the property, recites the consideration to be $7,500 in cash and a note for $2,500 with interest at 8% per annum due in six months, and "ordered, adjudged and decreed * * * that said

sale be in all things approved and confirmed."

On November 15, 1929, Ruby G. Borders executed her promissory note, payable on demand and bearing interest at the rate of 10% per annum from date until paid, to the First National Bank in Quanah for the sum of $7,500. On November 29th, thereafter, J. D. Hughes, the vice president of the bank, wrote Mrs. Borders that: "We are enclosing herewith your note for $7,500.00 marked 'paid'. The Harper deal was closed today which paid this note in full and we have charged your account with $25.27 covering the interest on fourteen days on $6,500.00." Mrs. Borders testified that the bank collected $7,500 of the money due the minors from B. E. Harper on the sale of the property and applied all of it to the payment of her personal note above set out. It is on this testimony with some circumstances indicating notice of the character of the transaction to the bank that the appellants assert show conclusively that the bank was guilty of conversion.

The books and records of the bank make not a conclusive but a prima facie case in favor of appellants, but the books and records are subject to explanation or contradiction by other competent testimony.

In Banks and Banking, Zollmann, Volume 5, page 340, § 3357, the author says:

"The books of a bank, reliably kept, are admissible in favor of the depositor. Banks of their own accord may under certain circumstances reverse their credit entries. Courts therefore will look through the forms of transactions and communications to get at the exact facts as evidence of his deposit and to a somewhat more limited extent in favor of the bank as the best evidence of the assets and liabilities of the bank, to show that deposits have been made or paid and to show that a claim is barred by limitation.

"Evidence that the bank's books do not show the deposit is at most negative evidence. While the presumption will be that the entries are correct such books are not conclusive and are subject to contradiction by any one who has personal knowledge of the facts."

This principle is approved in Anderson et al. v. Walker, County Judge, et al., 93 Tex. 119, 53 S.W. 821; Chapman, Commissioner of Banking v. Harris et al., Tex. Civ.App., 275 S.W. 75.

In 17 Tex.Jur. para. 239, page 576, the author says: "* * * Parol evidence is admissible to explain documents introduced as admissions without pleading fraud, accident or mistake, when such documents do not vest, pass or extinguish any right in litigation, but are used merely as evidence of the fact, and not as evidence of a contract or right."

The testimony of Mrs. Borders' attorney, C. Y. Welch, now District Judge, and Mr. Caskey and Mr. Hughes, the president and vice president of the bank, respectively, is to the effect that Mrs. Borders, prior to November 15, 1929, obtained an option from the owner to purchase what is called the Dandy Bakery in Lubbock, Texas, but before exercising such option she desired to sell the Bon Ton Bakery in Quanah. In order to find a purchaser therefor who would and could buy, she employed Messrs. Caskey and Hughes as brokers to assist her in making a sale of said property and agreed to pay them a commission of 5% on the consideration received for the Bon Ton Bakery. By virtue of the assistance of these gentlemen, Mr. B. E. Harper was procured who agreed to buy the property in Quanah for $20,000 and to pay $7,500 cash, execute one note for the sum of $2,500 for the benefit of the minors, secured by chattel mortgage on their interest in the property, and one note for $10,000, payable to the guardian, secured by a chattel mortgage on her interest in the property. Mr. Harper was not in a position to make the cash payment and Caskey and Hughes agreed to loan him that amount in their individual capacity and accept as security for the payment thereof a deed of trust on certain real estate belonging to Mr. Harper as soon as the title thereto was approved. Pursuant to this agreement they advanced $7,500 for Mr. Harper, the amount of the cash payment required, and deposited $6,500 thereof in the bank to the account of Mrs. Borders and gave her credit for $1,000 in payment of their 5% commission on the sale. The deposit of $6,500 was not subject to her check pending the approval of the title to the real estate belonging to Harper on which a lien was to be given to Caskey and Hughes or prior to the consummation of the sale of the interest of the minors in the Bon Ton Bakery property which could only be done through probate court. In order to protect these gentlemen and also the bank until the necessary court orders could be obtained

from the probate court of Hardeman County authorizing and approving the sale by the probate judge, Mrs. Borders executed her said demand note for $7,500, payable to the bank.

On November 15, 1929, before the probate court had authorized the sale of the property belonging to the minors, Mrs. Ruby G. Borders drew a draft on the First National Bank of Quanah, Texas, for the sum of $11,000, payable to the Citizens National Bank of Lubbock. After the order of the court had been obtained authorizing the sale and Messrs. Caskey and Hughes had advanced the cash payment required for the sale to be completed and subsequent to the consummation thereof, the bank of Quanah paid, on November 19th, to the bank of Lubbock on the draft the sum of $11,000. Mrs. Borders was the qualified guardian of the person and estate of the minor plaintiffs and the bank was authorized to pay the money on her draft. Quanah, A. & P. Ry. Co. v. Wichita State Bank & Trust Co., 127 Tex. 407, 93 S.W.2d 701, 106 A. L.R. 821. The record indicates that Mrs. Borders exercised her option to purchase the Dandy Bakery in Lubbock and that the money evidenced by the draft for $11,000 was used to pay therefor. The testimony shows that the note for $7,500 given to the bank by Mrs. Borders was not intended as a loan and that since the sale of the Quanah property was consummated as per contract, no financial obligation was evidenced by the note and that the bank, through its officers, so understood and that none of the proceeds derived from the sale of the property belonging to the minors was applied either by the guardian or the bank to the payment and satisfaction of said note.

It is unnecessary to recite in detail the facts pertaining to the suit filed in behalf of the minors in the District Court of Lubbock County by Ruby Borders as their guardian against the Citizens National Bank of Lubbock to recover for the misappropriation and conversion by said bank of the proceeds derived from the sale of the property here involved, which suit was voluntarily abandoned. In our opinion, the testimony is amply sufficient to warrant the court in concluding that the appellee bank did not receive or apply any of the funds belonging to the minors to the payment of the individual note of Mrs.

Borders and that neither she nor the bank was guilty of conversion.

In Anderson v. Walker, supra, the Supreme Court says: "The note, the check, and the entry of the credit upon the books were all parts of the transaction, however, and must all be considered together in ascertaining the rights which sprang from them; and, if any right in the county resulted, it must be such as the consent of the bank conferred upon it. It is an undisputed fact that a credit to the county was entered upon the bank books, and this, prima facie, represented so much money on deposit belonging to the county. It is true that this was only evidence of the fact, and that it was open to explanation. Newm. Bank Dep. § 131. The entry did not control the understanding under which it was made, and conferred no greater right than the parties to the transaction intended by it. Evidence was admissible to show the whole of the transaction, and the purposes of the parties are to be deduced from the whole of such evidence. Morse, Banks, 290 et seq." [93 Tex. 119, 53 S.W. 824.]

The judgment is affirmed.